## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2015, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | APPELLEE PRO SE |
| --- | --- |
| Bryan L. Ciyou | Billie Lavoie |
| Ciyou & Dixon, P.C. | Beech Grove, Indiana |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Robert Noyd,<br>*Appellant-Respondent,*<br><br>v.<br><br>Billie (Noyd) Lavoie,<br>*Appellee-Petitioner.* | December 10, 2015<br><br>Court of Appeals Case No.<br>49A02-1503-DR-128<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>John F. Hanley, Judge<br>The Honorable<br>Christopher B. Haile, Magistrate<br><br>Trial Court Cause No.<br>49D11-1405-DR-16383 |

**Kirsch, Judge.**

[1] Billie (Noyd) Lavoie ("Mother") filed a petition for dissolution in Indiana, asking for custody of the parties' two children. Robert Noyd ("Father") filed a

motion to dismiss Mother's petition for lack of subject matter jurisdiction, which the trial court denied. Following the trial court's denial of Father's motion to correct error, he now appeals and raises several issues that we consolidate and restate as: whether the trial court erred when it determined that Indiana had jurisdiction of the matter and, thereafter, granted Mother's petition for dissolution and custody of the children.

[2] We affirm.

## Facts and Procedural History

[3] The parties married in January 2005. They have two minor children, one born in 2005 and another born in 2008. In July 2009, the parties separated. What occurred at that time with the children is disputed: According to Mother, when she and Father separated, she took the children with her to Beech Grove, Indiana, but that Father "obtained the children from her" "under the guise of wanting the children to attend a family reunion," and refused to return them to her. *Appellant's App*. at 52. Father states that when the parties separated, Mother "left without the Children," went to Indiana, and "Father and the Children remained in Rock Island County, Illinois." *Id*. at 33.

[4] On January 3, 2011, while the children were in Illinois with Father, he initiated a child support action through the Illinois Department of Healthcare and Family Services ("HFS Department") in Rock Island County, Illinois ("Rock Island County action"). The matter came for hearing on February 9, 2011; Mother appeared pro se, and Father did not appear. The trial court's entry on

that date stated, in part, that Mother lived in Indianapolis, maintained insurance on the two children, and was "trying to file for divorce[.]" *Id*. at 47. It further stated, that Father "is here but is hiding out w/kids." *Id.* The trial court entered a support order on February 9, 2011 ("February 2011 Support Order"), requiring Mother to pay $100 per week plus an arrearage amount.[1] In April 2011, the matter came for hearing, at which Mother and Father both appeared in person. The trial court issued an order ("April 2011 Support Order"), stating that Mother "has actual custody of kids," but "due to the IL support order entered 2-9-11 and pursuant to 750 ILCS 45/14(a)(2) [Father] has legal physical custody of the children." *Id*. at 45; *see also id.* at 47 (entry stating that "she has children" but "he has legal custody" because a support order was entered). The trial court's entry also provided, "Support order entered for [Father] *until final custody decision* in a divorce case." *Id*. at 47 (emphasis added).

[5] In February 2012, the parties attempted to reconcile, and Father moved to Indiana with the children. Mother, Father, and the children lived together in Beech Grove. In January 2013, Father filed a "Cancellation Request" with the HFS Department, stating that he desired to cancel the services of the child support division of the HFS Department. *Pet'r's Ex.* 1.

[6] The parties lived together in Indiana for over two years, but their attempt at reconciliation failed, and on May 16, 2014, Mother filed a petition for

---

[1] A copy of the February 2011 Support Order is not included in the record before us.

dissolution of marriage, which also sought custody of the two children. Approximately a week later, Father left with the children and went to Sherrard, Illinois, which is in Mercer County. On August 4, 2014, the Indiana dissolution court scheduled a preliminary hearing for August 22, 2014.

[7] Two days before that hearing was set to occur, Father filed in Mercer County, Illinois a petition for order of protection against Mother, seeking protection for himself and the two children. The Mercer County court issued an emergency order of protection on August 20, effective through September 4, 2014, and a hearing was set for that date. Among other things, the temporary emergency order of protection granted Father "the physical care and possession" of the two children and ordered Mother not to remove them from Father's care. *Pet'r's Ex. 1.*

[8] On August 22, 2014, the Indiana dissolution court conducted a preliminary hearing on Mother's petition for dissolution. Mother appeared in person, and Father appeared by counsel. Prior to the hearing, Father had sent to the trial court the April 2011 Support Order from Rock Island County, and he represented to the trial court that the February 2011 Support Order, which was referenced in the April 2011 order, awarded him custody of the children. Mother disagreed and told the trial court that the Rock Island order was "just for child support," and "[T]here's no custody paperwork." *Tr.* at 8. Father's counsel advised the Indiana dissolution court of the then-existing emergency order of protection recently issued by the Mercer County court, and he argued that the Mercer County court thereby had jurisdiction of the matter, including

custody of the children. Upon the trial court's questioning, Mother stated that the children had been attending Beech Grove schools for the prior two school years, school resumed on July 31, and since they had missed so many school days already, the Beech Grove schools had reported the situation to the Indiana Department of Child Services. Father's counsel advised the trial court that Father had just enrolled the children in school in Illinois on Monday, August 18. The trial court expressed concern about the situation to Father's counsel:

> [I]f your client's playing games with this Court, there will be severe consequences, okay? If he [] snatched these kids and ran over to Illinois and filed for a Protective Order, and is going to play this game, and just enrolled them in school[,] then I'm not having that.

*Id.* at 10. Mother testified under oath that she had not seen her children in 83 days and that "I have asked him and asked him and asked him . . . He will not let me see them." *Id.* at 13. The trial court advised that, based on the testimony of Mother and documentary evidence from the Beech Grove schools indicating that the children had been attending there, it was "inclined" to grant Mother temporary custody, but declined to do so at that time because the Mercer County court had issued the order of protection and "checked off some things regarding custody[.]" *Id.* at 14, 17. Therefore, the trial court stated that it intended to contact the Mercer County court to share the fact that "these kids have been living in Indiana," that "they have been spirited over to Illinois by [Father,] and that the State of Indiana "has jurisdiction." *Id.* at 16. The following day, the Indiana dissolution court issued a preliminary order

("Preliminary Order"), awarding temporary custody to Mother and directing Father to immediately transport the children back to Indiana or to arrange transfer of them to Mother. The Preliminary Order provided that Father was entitled to parenting time in Indiana.

[9] On September 3, 2014, the Indiana dissolution court held a second preliminary hearing. Mother appeared in person, and Father appeared by counsel, who advised the dissolution court that he had faxed the trial court's Preliminary Order to Father and discussed it with him. Counsel advised that Father had consulted with two attorneys in Illinois, who told Father not to come back or bring the children back to Indiana, as that would be a violation of the Mercer County's order of protection. Counsel told the dissolution court, "[H]e claims that he has custody in Illinois." *Id*. at 22. The dissolution court replied that he had spoken with the Mercer County judge, who issued the ex-parte protection order and "I don't think the Judge is particularly amused at the game that [Father] . . . played and got custody." *Id*. at 23. The Indiana dissolution court further stated that Indiana had jurisdiction, and the Mercer County court "agreed to defer to us on this." *Id*. at 23, 26 ("that Judge . . . is in agreement that we have jurisdiction"). Mother stated that she planned to attend the September 4 hearing in Mercer County to contest the order of protection, and the Indiana dissolution court instructed her to bring with her the Indiana dissolution court's Preliminary Order granting her temporary custody of the children.

[10] On September 8, 2014, Mother filed a verified petition for contempt in the Indiana dissolution court because Father had not returned the children to Indiana or to Mother's custody. She averred that she appeared in Mercer County, Illinois for the September 4 hearing on the order of protection and that the Mercer County court "dropped the order and said that Indiana has jurisdiction." *Appellant's App*. at 17. However, Illinois law enforcement would not permit Mother to take the children because of the existence of Father's February 2011 Support Order.

[11] On September 30, 2014, Father filed in the Indiana dissolution court a Motion to Dismiss the custody portion of Mother's dissolution petition for lack of subject matter jurisdiction. Father's argument was that the Rock Island County court's April 2011 Support order "awarded Father legal custody of the minor children," "that Father's legal custody has remained in effect," and that although the dissolution court talked to Mercer County, it was, in fact, Rock Island County that made the initial jurisdictional determination. *Id*. at 20. Father asserted that, regardless, the Indiana dissolution court should have allowed the parties to participate in the communication or otherwise make a record of it pursuant to Indiana Code section 31-21-4-4.

[12] On October 1, 2014, the trial court held a hearing on Mother's petition for contempt and Father's motion to dismiss. Mother appeared in person, and Father appeared by telephone. Father's counsel was also present at the hearing. The trial court expressed its finding that Indiana possessed jurisdiction, explaining, "You were living here for 2 years and [] this was the home state of

the children. This state has jurisdiction." *Tr.* at 40. The trial court told the parties that it had spoken with the Mercer County judge that had issued the ex-parte order of protection and, "[H]e agreed[.] We have jurisdiction." *Id.* With regard to Father's motion to dismiss, Father's counsel argued that, because of the February 2011 Support Order (issued by Rock Island County), the current situation was not an initial custody determination, but rather was a modification of an existing custody order that required a showing of changed circumstances. Counsel further argued that neither the parties nor Father's counsel had an opportunity to participate in the dissolution court's conversation with the Mercer County court, nor was there any record made of that communication as required by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), and, therefore, the Indiana court's finding of jurisdiction was not proper. On October 3, the dissolution court denied Father's motion to dismiss, found that it possessed jurisdiction over the parties to dissolve their marriage and determine custody of their children, and directed Father that he had until Saturday, October 5 at 6:00 p.m. to deliver the children to Mother.

[13] On October 6, Mother filed an emergency motion for contempt, as Father had not yet returned the children to her. On October 7, 2014, the dissolution court held a contempt hearing. Mother appeared in person, and Father appeared by counsel. The trial judge spoke to Father, who "said he was not bringing the

children." *Affidavit of Court Reporter*. [2] The dissolution court found Father in contempt, issued a bench warrant for his arrest, and suspended his parenting time with the children.

[14] On November 19, 2014, the Indiana dissolution court held a final hearing. Mother was present in person; Father was not present in person or by counsel. Mother testified that she did not know where Father was living as "he will not give me the address." *Tr.* at 53. She further testified that her only contact with the children was talking to them "for a couple minutes" before bedtime. *Id*. She also testified that she had filed in the Mercer County court a motion to domesticate the Indiana court's judgment, but Father filed a motion to quash and that a hearing had been set for December 8. Mother also told the Indiana dissolution court that Father filed for dissolution in Illinois.

[15] According to Mother's testimony, Father also had re-opened the Rock Island County child support case and obtained a child support order, and Mother thereafter filed in Rock Island County a Petition to Change Venues or to Modify Child Support. On November 26, 2014, the Rock Island County court entered minutes recognizing that Mother "got permanent custody of children" on November 19, and it continued the matter until January 7, 2015 for Mother

---

[2] In preparing his appeal, Father requested that the court reporter transcribe various hearings, including the October 7, 2014 contempt hearing. The court reporter submitted an Affidavit to this court averring that she was unable to play the audio from the hearing which was about five minutes in length, but she was able to locate the "log notes" of the hearing, which she transcribed and submitted to this court as an attachment to her Affidavit. She contacted two outside word processing agencies, who were unable to recover the audio from the October 7 hearing.

to amend her petition to include "exemplified copies of the custody papers." *Appellant's App*. at 47.

[16] On December 18, Father filed in the Indiana dissolution court a Verified Motion to Correct Errors, Relief from Judgment, and to Dismiss Default Judgment for Lack of Jurisdiction ("Motion to Correct Error"). In his motion, Father argued, among other things: (1) the Rock Island County Support Orders, either or both of them, "awarded legal and physical custody of the Children" to Father; (2) jurisdiction "was never transferred or relinquished" from Rock Island County; (3) Rock Island County, not Mercer County, "is the county which issued Orders regarding support and custody"; and (4) therefore, Rock Island County has continuing and exclusive jurisdiction. *Appellant's App*. at 33, 35, 40. The Indiana dissolution court denied Father's Motion to Correct Error on February 4, 2015,[3] and he now appeals.

## Discussion and Decision

[17] We generally review rulings on motions to correct error for an abuse of discretion. *French v. French*, 821 N.E.2d 891, 895 (Ind. Ct. App. 2005). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. *Lighty v. Lighty,* 879 N.E.2d 637, 640 (Ind. Ct. App. 2008). Our standard of review for appeal of a motion to correct error directs us to

---

[3] Father states that his motion was deemed denied on February 2, 2014.

consider the propriety of the court's decision on the underlying order, here the denial of Father's motion to dismiss. *Id.*

### *Rock Island County Child Support Proceedings*

[18] Father's primary argument on appeal is that the Rock Island County February 2011 Support Order "awarded" custody to Father and that, therefore, Rock Island County is the county with exclusive and continuing jurisdiction of the matter of the custody of the children, rendering the Indiana dissolution court's custody determination void. *Appellant's Br.* at 8, 24, 31, 32, 33; *see also id.* at 9 (characterizing Rock Island County support order as "custody decree"). We reject Father's claim for a number of reasons.

[19] As an initial matter, although Father repeatedly claims that he was "awarded" custody in Rock Island County's February 2011 Support Order, he did not provide the Indiana dissolution court or this court with a copy of that order. He thereby failed to comply with our appellate rules. *See* Ind. Appellate Rule 50(A)(2) (appellant's appendix shall contain copies of pleadings that are necessary for resolution of the issues raised on appeal.) The record does include the Rock Island County's April 2011 Support Order, which refers to the prior February 2011 Support Order:

> [Mother] has actual custody of kids but due to the IL support
> order entered 2-9-11 and pursuant to 750 ILCS 45/14(a)(2)
> [Father] has legal physical custody of the children.

*Appellant's App.* at 45. The referenced Illinois statute ("Section 14(a)(2)") states:

> If a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting custody to the other parent. If the parentage judgment contains no such provisions, custody shall be presumed to be with the mother[.]

750 Ill. Comp. Stat. 45/14(a)(2). Section 14(a)(2) appears in Illinois's Parentage Act, which is intended to apply to such matters as establishment of paternity. *See In re N.C.*, 12 N.E.3d 23, 33 (Ill. 2014) ("The Parentage Act creates a statutory mechanism for legally establishing a parent-child relationship."); *In re Parentage of J.W.*, 990 N.E.2d 698, 706 (Ill. 2013) ("The Parentage Act establishes comprehensive scheme for determining paternity and for establishing custody, visitation and child support obligations in connection with a judgment of paternity."). Here, Mother and Father were married in 2011, and paternity was not an issue. Therefore, we question the applicability of Section 14(a)(2) to the present situation. However, even assuming Section 14(a)(2) applies to the facts of the present case, an Illinois appellate court in *In re B.B.*, 960 N.E.2d 646, 652 (Ill. Ct. App. 2011), examined that statute and determined that a child support order obtained by HFS Department was not a "custody judgment" as contemplated by Section 14(a)(2).

[20] In that case, a mother filed a petition in 2002 to establish paternity. In March 2003, the court issued a temporary child support order, and in June 2004, it granted the petition to establish paternity, but because the parties were reconciled and living together at that time, no support order was entered. *Id.* at 648. Later, in January 2010, the HFS Department filed a petition to intervene

and sought an order of child support.[4]  In April 2010, the trial court entered a temporary order of support, and following a hearing, the court entered a permanent child support order in May 2010.  *Id*. at 649.  The next month, the father filed a petition for custody, and the mother filed a motion to dismiss; her argument was that the April 2010 temporary support order granted her custody pursuant to Section 14(a)(2) of the Illinois Parentage Act, and that because the father's request for custody was within two years of that judgment, Illinois law required the father to allege and prove that the children were endangered in their present environment.  The trial court initially determined that the May 2010 child support order was a custody judgment, but it thereafter reconsidered and determined that the June 2004 parentage order, which entered an order of paternity, was a custody judgment, and thus, it had been more than two years since the prior order.  *Id*.  The trial court ultimately awarded custody of the children to the father.  *Id*. at 651.  The mother appealed, claiming that the trial court erred in finding that the May 2010 support order was not a custody judgment.  That is, she claimed that the May 2010 support order "was a judgment awarding her custody of the children" pursuant to the language of Section 14(a)(2) of Parentage Act.  *Id.*

[21]  On appeal, the *In re B.B.* court interpreted Section 14(a)(2) and determined, "Section 14(a)(2) of the Parentage Act expressly *applies to parentage judgments*

---

[4] Father's responsive pleading noted that no prior court order had assigned custody of the children to either party, but he acknowledged that the mother had physical custody of them.

and *does not address temporary child-support orders* entered before the parentage judgment or support orders after a final parentage judgment." *Id*. at 653 (emphasis added). That is, the court found that neither the May 2010 permanent child-support order nor the prior temporary child-support order constituted a custody judgment under section 14(a)(2) of the Parentage Act. *Id*.

[22] Here, as in *In re B.B.*, the HFS Department petitioned for child support, and the Rock Island County court issued an order of support in February 2011 and in April 2011. Father argues, as did the mother in *In re B.B.*, that either or both of those support orders constituted a custody determination. Applying the principles of *In re B.B.* to the present case, we find that Rock Island County's Support Orders were not custody judgments under Illinois law, and neither of the Support Orders established custody.

[23] We find further support for our decision in that regard because, similar to Indiana's statutory scheme for determining child custody, Illinois's Parentage Act provides that custody shall be determined "in accordance with the relevant provisions of Illinois's Marriage and Dissolution of Marriage Act," and Section 602(a) of the Marriage Act requires courts to determine custody in accordance with the best interest of the minor and considering all relevant factors, including the ten factors enumerated therein. 750 Ill. Comp. Stat. 45/14(a)(1); 750 Ill. Comp. Stat. 5/602(a). Here, Father presented no evidence to the Indiana dissolution court that the Rock Island County court considered the best interests of the children. Indeed, the Rock Island County court explicitly recognized in its case history entry that the support order was being entered

"*until final custody decision in a divorce case*." *Appellant's App*. at 47 (emphasis added). From this, we can infer that the Rock Island County court recognized the likelihood of, if not the need for, a subsequent custody determination in a dissolution case.[5]

[24] To the extent that Father argues that Mother's request for custody in her petition for dissolution was actually a modification of custody, as opposed to an initial determination, and consequently, she needed to, but failed to, prove that there had been a change in circumstances as required by statute, we have already found that the prior child support orders were not custody judgments. Therefore, we reject Father's claim that Mother's request for custody was a request for modification of custody. Similarly, we find that Father has failed to establish that the trial court abused its discretion when it awarded custody to Mother and when it granted him no parenting time until he presents himself to the Indiana dissolution court. The trial court's August 2014 preliminary order awarded temporary custody to Mother, ordered Father to "immediately transport the Children back to Indiana," and granted Father "parenting time in Indiana but the children shall not be removed from the state[.]" *Id*. at 16. Father did not return the children. The dissolution court's October 3 order again stated that Father "shall [] have parenting time with the children under the Indiana Guidelines," but ordered him to return he children, which Father

---

[5] We note that because Father had filed in January 2013 a request in the Rock Island County child support case to "cancel [his] case[,]" the support case may have been closed at the time of the Indiana dissolution court's decree. *Pet'r's Ex.* 1.

told the trial court he would not do. *Id.* at 24. After Father did not return them as ordered, the trial court suspended Father's parenting time and thereafter ordered he was not granted parenting time "until he presents himself to this Court and requests parenting time." *Id.* at 8. The trial court's approach was reasonable and tailored to the situation, allowing for Father to present himself to the court and present evidence. We find no abuse of discretion.

### UCCJEA

[25] On appeal, Father argues, as he did in his motion to dismiss, that the Indiana dissolution court violated the UCCJEA when it spoke with the Mercer County court following the August 22, 2014 preliminary hearing in this matter and before it issued its ruling later that day granting temporary custody of the children to Mother. Specifically, Father argues that "when a jurisdictional question arises in a cross-state child custody matter," Indiana Code section 31-21-4-1 allows an Indiana trial court to communicate with the court of the other state that is purported to have jurisdiction, and if such communication occurs, Indiana Code section 31-21-4-4 requires: "A record must be made of a communication," and the parties must be informed and granted access to the record. *Appellant's Br.* at 14. He argues that because there was no record of the communication, his due process rights were violated.

[26] Based on the circumstances before us, we reject Father's claim that reversal is necessary for failure to comply with the UCCJEA. Father does not argue, nor do we find, that the Mercer County court made a custody determination when it, on an ex-parte petition for an order of protection, checked off boxes on a

form indicating that, until a hearing could be held on the matter, the children would be in Father's custody. Indeed, Father concedes, "Mercer County, Illinois, merely had jurisdiction of an emergency nature to address the Petition for a Protective Order that Father filed in 2014." *Appellant's Br*. at 8. Although Father argues that the Indiana dissolution court erred when it failed to record the conversation with the Mercer County court, he acknowledges "that [Mercer County] may not have had jurisdiction in the first place for which it could relinquish same to the State of Indiana," and "Thus, the telephonic judicial conference to determine jurisdiction occurred with the wrong tribunal." *Id*. at 18, 25. Father nevertheless asks us to reverse for further proceedings "to determine whether Rock Island County, Illinois, or the State of Indiana has jurisdiction to enter Orders regarding the custody of the minor children[.]" *Appellant's Br*. at 19. It is thus undisputed that Mercer County did not have jurisdiction. Consequently, any failure to record the conversation with the Mercer County Court was not fatal to the Indiana court's subsequent dissolution and custody order.

[27] Furthermore, even if the Mercer County court's order of protection could be considered in some sense a determination of custody, and the UCCJEA applied, that order was temporary, expiring by its terms on September 4, 2014, when, after the hearing, the Mercer County court dismissed the protection order. The record before us indicates that Mother subsequently filed, on November 29, in the Mercer County court an Amended Petition to Domesticate Foreign Judgment, which the court granted on December 18,

2014.[6] *See Appellant's App*. at 51 (Mother's avers in her verified response to Father's motion to correct error that Mercer County court domesticated Indiana dissolution court's judgment). Indiana Code section 31-21-5-1 provides that, under the UCCJEA, the "home state" of the child is the state where the child has resided for the previous six months prior to the date of the filing of the proceeding, and subsection 3 provides that an Indiana court may assume jurisdiction when it is determined that the foreign state no longer has jurisdiction. Given the record before us, we conclude that the Mercer County protection order proceedings did not create an interstate custodial issue that implicated the UCCJEA, such that any failure by the dissolution court to make a record of the phone call did not result in reversible error, and even if the UCCJEA did apply, Indiana was the proper home state.

[28] As the Indiana dissolution court stated numerous times, the parties – Mother, Father, and the two children – lived here in Indiana for over two years, Mother filed for dissolution in May 2014 while all parties were living here, and days after she filed, Father left. No prior custody determination had been made before the Indiana dissolution court issued its decree and award of custody. Accordingly, we find that the trial court did not abuse its discretion when it denied Father's motion to correct error.

---

[6] Mother states in her brief that, on that date, while accompanied by a local sheriff, she obtained custody of the children from Father. *Appellee's Br*. at 5. Father likewise acknowledges that, following the Final Decree, the children were transferred to Mother's custody. *Appellant's Br*. at 6.

Affirmed.[7]

Najam, J., and Barnes, J., concur.

---

[7] Father's Motion to Strike Appellee's Brief and/or for Appellate Attorney Fees is denied by separate order.